## Case No. 18,014.

WOODWORTH et al. v. EDWARDS et al.

[3 Woodb. & M. 120; [1] 2 Robb, Pat. Cas. 610.]

Circuit Court, D. Maine. Sept. 18, 1847.

PATENT FOR INVENTION—EFFECT OF EXTENSION—BILL IN CHANCERY—OMISSION OF OATH—SUIT FOR INJUNCTION.

1. The omission to make oath to a bill in chancery, praying for an injunction, is not here a cause of demurrer, after a hearing and order to file evidence. But it should be objected to by motion when the respondents appear, and the oath will then be directed. unless good cause is shown to the contrary. There is no rule of the court, requiring an oath here to be filed with the bill.

[Cited in brief in National Hay Rake Co. v. Harbert, Case No. 10,044.]

2. After a special demurrer to a bill, the allegations of fact must, on the hearing of the demurrer, be considered as true. When a special statute extends a patent for seven years, the original patent must be treated as in law for seven years longer. So must a patent be, which is extended seven years by the board of the patent office. An original patent, extended in both of these ways. must be considered as a patent for twenty-eight years.

3. The specification for both extensions is the original specification. If all are surrendered

and an amended one issued, the new letters should be for twenty-eight years. If the old specification had been adjudged good. but was still questioned and litigated, and appears to be in some degree inoperative from certain defects, supposed to have happened by mistake, the commissioner, on its surrender, may issue new letters for twenty-eight years, with an amended specification, and if he does, they will be presumed—till the contrary is shown—to be for invention. and for a defect rendering the old letters, in some degree, inoperative, and which happened from inadvertence or mistake.

[Cited in Hussey v. Bradley, Case No. 6,-946.]

4. When a demurrer for these causes is overruled, the respondents may have leave to answer further by the payment of costs, and they may further contest a temporary injunction, though after an order to file testimony in it none was filed, but merely a demurrer.

5. But after such neglect of the order and the overruling of the demurrer as bad, the case will not be opened for further hearing as to the temporary injunction, but be treated as if the facts were confessed. unless an affidavit is filed that the course pursued was not for delay, and indemnity is also filed against any damage caused by the delay and the use of the machine against which an injunction is desired.

6. Where one respondent run a planing machine and two others owned it, the injunction was issued as proper against the three.

7. After the supposed inventor of a machine, in a contest with these plaintiffs in another circuit, had been enjoined not to use that machine, because an infringement on the plaintiffs', those purchasing it of the supposed inventor, so enjoined, cannot be allowed to use it while that injunction remains in full force and the grounds of that decision are in no way overturned.

8. But where the respondents deny the validity of the patent of the plaintiffs. the court will dissolve the injunction at the next term, if the suit at law is not by that time brought against them to try that validity.

[Cited in Brooks v. Norcross, Case No. 1,957.]

9. The terms imposed on the suit are, that the trial be confined to the objections set up by the respondents in their answer and affidavit against the validity of the patent, and that the action may be in the name of any one claiming an interest in this district, which is supposed to have been violated by the respondents.

This was a bill in chancery, praying for an injunction against the respondents [James Edwards and others] for using a planing machine, the patent for which was alleged to be vested in the plaintiffs [William W. Woodworth and others]. The allegations were as usual in this class of cases. several of which, in this circuit, have been before tried and reported, stating, among other things, the original invention to have been made and patented in December, 1828, by William Woodworth, since deceased—his rights to have become vested in the plaintiffs—an extension to have been granted of the original patent for seven years. by the board of commissioners, in 1842—another, for a like term, by congress, in a special law in February, 1845—and a surrender of them all made afterwards, on account of mistake in the specification—and new letters of patent issued for the whole twenty-eight years, on the 8th day of July, 1845. The bill was filed 16th July, 1847, and a subpoena

[1] [Reported by Charles L. Woodbury, Esq., and George Minot, Esq.]

and notice given that day. On the 23d July, 1847, a hearing was had before Judge Sprague, on a motion for a preliminary temporary injunction, and, after listening to both parties, an order was made by him that the plaintiffs, within twenty days, file their evidence in support of it, and the respondents file theirs within ten days. Before this last period expired, viz. 2d August, 1847—the last day to file evidence by the respondents—instead of complying with the order, they filed a special demurrer to the whole bill, setting out the following causes: (1) That no oath or testimony to the truth of the bill had been put on file with it. (2) That the letters patent, now relied on, of July, 1845, should have been issued for twenty-one years instead of twenty-eight years, and consequently were void.

B. R. Curtis, for complainants.
J. T. Tasker, for respondents.

WOODBURY, Circuit Justice. We have requested the demurrer in this case to be argued first, as a demurrer may affect both a temporary and permanent injunction. In the natural order of things, such an objection, by demurrer, which may turn out to be one of form merely, ought to be considered before the merits of the application. In a prayer for an injunction and a demurrer filed, it has been adjudged that the demurrer should be first heard and disposed of. 6 Madd. 299; 1 Smith, Ch. Prac. 214.

The first ground assigned for this demurrer, is the want of an oath to the bill, or any evidence in its support. But this is a ground more properly to be taken at a hearing on the merits against proceeding further, till such oath or such evidence is put in. It is a matter in pais and affecting the trial of the facts rather than a defect in the bill itself. Of course, at the trial, or hearing, whether a case is made out, or not, if the facts which the bill alleges are denied by the respondents, the plaintiffs must furnish evidence of them before succeeding. Generally they must do it by their oath to the truth of the bill, and always by other testimony, prima facie satisfactory, before the respondents are obliged to rebut it by evidence on their part. But sometimes this need not be done by the complainant, where the respondents do not appear and are defaulted; or, after an appearance and order, do not comply with it, and the allegations in the bill are taken pro confesso; or, if after such an appearance the respondent virtually admits the truth of the facts, by demurring merely on account of the want of law in the bill.

The only precedent cited of a different character is that of Lansing v. Pine, 4 Paige, 639. But that decision seems to be founded on the special rules of the New York court of chancery and its peculiar practice, requiring an oath to the truth of some bills to be filed with them, such as in that case, for discovery and other matters as to the contents of a writing, without any evidence accompanying the bill

as to its loss. See the rule stated in 1 Barb. Ch. Prac. 44. Here no such rule exists as to bills of injunction or any others. The practice here, is usually for the complainant to make oath to his bill when it is signed, but this is not imperative nor uniform. It is not then done, if he is absent or indisposed, though it should be done probably before the hearing, unless it be a bill by a corporation, or unless an answer under oath is not asked, or unless an oath to the bill is waived, or its absence is not objected to by the respondents when first heard. And if the principal is not in a situation to swear to it, the oath may be made by an agent. 1 Barb. Ch. 41. When this case was before my associate at a former hearing, and when the order was made as to filing other evidence, no exception was taken to the absence of an oath to the bill, and we both concur in the opinion that afterwards, if at all, a demurrer is not good for that cause in this court.

The only remaining ground for a demurrer assigned in it, is, that the last letters patent, set out in the bill as for twenty-eight years, should have been issued for only twenty-one. Thus, after reciting the surrender and issue of new letters for twenty-eight years, the demurrer says: "Whereas the defendants are advised that by law the said last mentioned letters patent should have been granted for the term of twenty-one years from the said 27th day of December, 1828," etc. This would seem to have been stated under an impression that the bill contained no averment of a second extension of the original patent for a second seven years; and hence that from the bill on its face, the renewal, in order to cover all the terms alleged in the bill, should have been for only twenty-one years instead of twenty-eight. But, on examination, the second renewal for seven years appears to have been alleged in the bill, saying it was made by congress by a special act in February, 1845. To be sure it is not inserted immediately following the averment of the other renewal, and hence may have been overlooked by the respondents; but it is there. The bill then, on its face, contains allegations of an old patent of fourteen years and two renewals of seven years each and hence the last letters, to cover them all, are properly for twenty-eight years instead of twenty-one.

But in argument another position is taken, viz. that the renewal could not by law be made to cover the last extension of seven years by congress, as that extension had not been evidenced by any letters patent which might be surrendered. But on turning to the eighteenth section of the act of congress of July 4, 1836, concerning patents, it will be found that when the board made the first extension of seven years, and it was certified on the original letters of fourteen years, it came within the enactment which existed in express terms, that "thereupon the said patent shall have the same effect in law as though it had been originally issued for

twenty-one years." 5 Stat. 125. And when the second extension was granted by congress for seven years more, making, in all, twenty-eight, from December, 1828, the act, proprio vigore, merely extended the patent seven years longer than before. The original patent, in this way, had in law become one for twenty-eight years. The act imposed, next, an obligation on the commissioner to give a certificate as to the last extension, if desired by the administrator of the patentee, but not without. Next, the original patent had not only thus in law, de jure, as well as in common parlance, become one for twenty-eight years from December, 1828, instead of the original fourteen, or that and the next seven, but it had become a patent for twenty-eight years under one and the same original specification. There was no other in existence. But the administrator became satisfied from repeated trials, and numerous exceptions taken to his specification, that it was in some respects defective; that this cast a shade over its validity, and rendered it less operative and successful and profitable than it would be if the defect was removed, and, believing that this defect had arisen from inadvertence or mistake when the original specification was filed, he applied, as the law permits in such case, for leave to surrender his patent, as it then stood, and to receive instead of it one with an amended specification. It is difficult to conceive, then, why, when this patent was afterwards surrendered under the thirteenth section of the patent law, and new letters were obtained with an amended specification, it should not be for the whole twenty-eight years, and should not be as valid for the whole twenty-eight as it would be for twenty-one years. The demurrer seems to admit the renewal to be valid for the term of twenty-one years, but not for the twenty-eight years. But it being as valid for the latter as the former, the demurrer, with such an admission, cannot properly be sustained on this account.

There is another difficulty in sustaining this demurrer, on the ground now taken by counsel—that the old specification has been, by some courts, pronounced valid and not defective or insufficient, and therefore that it must be considered to have been valid. But it is questionable whether the defendants can now be permitted to argue that the patent was good in form at first, after the allegations in the bill of its defective character, and which the demurrer virtually admits. "On the hearing of a demurrer the courts are bound by the plaintiffs' allegations of facts," etc. Cuthbert v. Creasy, 6 Madd. 189; 1 Smith, Ch. Prac. 211; Balls v. Strutt, 1 Hare, 148. But supposing these objections to go rather to what must be considered matters of law than fact alleged, how does the case in this respect, stand? The reasoning being that the renewal is not valid for even twenty-one years, on the ground

that the first letters patent and first specification had been upheld as good by judicial decisions, the respondents, therefore, are right in contending that those letters and specification could not be considered "inoperative or invalid," in the language of the thirteenth section, so as to justify the commissioners in issuing new letters with an amended specification. 5 Stat. 122.

But it would be a sufficient answer to this position, were it proper to be taken under the form of this demurrer, and after admitting the renewal to be good for twenty-one years, that the supreme court has, in the cases under this renewed patent for twenty-eight years, in 4 How. 646, proceeded on the ground that these identical renewed letters were valid. And though I have no recollection that this question in relation to these was discussed in those cases, yet the letters must necessarily have been considered good in order to authorize the judgments in their favor, which were then and there rendered on them. Woodworth v. Hall [Cases Nos. 18,016 and 18,017]. And though this would not preclude the supreme court from hearing their validity debated in another case upon this objection, yet it would be hardly decorous for a circuit court to decide differently on their validity, till the supreme court had reconsidered and changed what is involved in its former decisions. Towne v. Smith [Case No. 14,115]. Nor would these be of much use to the respondents, if this court, or the supreme court, should make a different decision. Because, if the renewal was not valid at all, neither could the surrender be valid, which led to it, assuming the ground of the respondents, that the old patent surrendered was, and had been pronounced by the judiciary to be good. The old letters, and the extension under them, would be considered in full force, and good also, if the surrender was by mistake, supposing new letters could be validly given instead of them, when they could not be, avoiding thus both the new letters and the surrender. All violators of the patent could be prosecuted under the old and valid patent, in the old form and with the old specification, as well as under the new letters and new specification. If these were vacated, bills and writs could be amended and would declare on the old instead of the new letters, and this done with little or no terms, under such circumstances, not altering the merits but affecting merely forms. This was intimated in Woodworth v. Hall [supra].

But the present respondents have not been satisfied on suggestions like these to abandon this objection, or to refrain from asking a decision by this court on the force of it. Hence, to oblige them, I would state frankly, that my impressions are strongly in favor of the validity of the new letters, independent of what has been done on them in the supreme court. I think, by law, the original patent had become one for twenty-eight

years instead of fourteen or twenty-one. I think the old specification applied to the patent for the whole *term of twenty-eight years; that the surrender was of all for the twenty-eight years; the renewal for all; and that the right to renew by the commissioner probably existed, although some courts had decided in favor of the old patent. Because their decision, if right, might still rest in some doubt, might not be acquiesced in generally, and, without amendments in the specification, might be constantly open to new and prolonged litigation, so as to render the patent valueless, and, in many respects, "inoperative." If the decision was wrong—as judicial opinions by state courts and circuit courts, and even by supreme courts, sometimes are wrong—surely these amendments would be prudent and proper, in order to save the patent from becoming, ere long, entirely both "inoperative" and "invalid." The act of congress makes the commissioner the judge in relation to the allowance of an amendment, on the ground that the patent is inoperative or invalid so as to justify it, and that the error, to be corrected in the specification, has happened from "inadvertency, accident or mistake." If he permits an amendment, after a hearing on these matters, it is at least primâ facie proof that the state of things in these respects warranted it, as well as that the amended specification relates to the same patent. For he is not by law allowed to permit any other than the old patent to be described in the amendment, and he must be presumed to have done his duty in all these particulars, till the contrary is shown. Allen v. Blunt [Case No. 217]. Nor is this a great or dangerous power to be entrusted to that officer; but a salutary, remedial authority, necessary often to insure justice to useful inventors, and protect the sacred rights of genius and property. But whenever there is any just ground to suppose this power has been fraudulently or corruptly abused, the door is open to prove it, and visit its consequences on the guilty, not only by avoiding the renewal, but by inflicting condign punishment for the guilt.

Viewing this objection as imputing neglect or error to a public officer, rather than the plaintiffs, it is to be considered, also, with favorable inclinations not to let individuals suffer, except in clear cases of wrong, by the neglect of such officers—persons other than the inventors, or those in their private employ—persons in official station, and to whom they are, by the laws of the constitution, and not always by their own choice, compelled to confide portions of their business. Woodworth v. Hall, supra. Much less should they suffer by others, when their error is one more of form than substance to third persons, and if to a certainty not sustainable in law, this change would work no injustice to others, and would leave the plaintiff still entitled to redress in an amended form of the bill, relying on the old letters.

Deciding against this demurrer, the next inquiry is, whether this decision must operate as final in favor of the application for a preliminary and temporary injunction. Because the order of the court, in July last, to file testimony by the respondents, in ten days, has not been complied with, and no excuse is offered for this omission except a demurrer put in on the last day of the time granted, and which has led to several weeks' further delay, and been overruled. Under the twenty-fourth rule of this court, where a demurrer is to a bill as here, and it is overruled, the party making it can still—on paying costs—have a trial on the merits or principal matter in dispute—which is here a permanent injunction. In England, without a specific rule: "If the demurrer is overruled, the defendant pays to the plaintiff the taxed cost occasioned thereby, unless the court make other order to the contrary." 1 Smith, Ch. Prac. 213.

The respondents, then, may still have a hearing as to a permanent injunction, and I am willing to allow a hearing on that, after the proper pleadings and proofs are put in, and the costs paid. But how stands the right to proceed further in the preliminary hearing and motion for the temporary injunction, after having once appeared and an order made, which has been neglected, and a demurrer put in, which has created much delay, and finally has been overruled? My impression is that the former order should not be renewed and extended after all this, unless the party, by affidavits, will satisfy the court that the order was not omitted to be complied with for purposes of delay, and will put security on file for any damage done by running the machine in dispute, during the delay to comply with the order. If this is done in a reasonable time—say forty-eight hours—I would extend the order longer; but if not done, issue the temporary injunction on account of the neglect to comply with the first order, and the virtual confession of a violation of the plaintiffs' patent by the demurrer, if the present letters are valid—as we are inclined to hold them to be. In either case—though the respondents by their course seem to admit the truth of the facts alleged in the bill—the plaintiffs, if they can conscientiously, had better file their oaths to the truth of the bill; and file any collateral evidence which has been taken on their part under the order.

The respondents then moved for leave to answer to the bill, which prayed for a permanent injunction, and were allowed to do it on payment of costs. They moved next for leave to contest the temporary injunction further, and be excused from the non-fulfillment of the first order, and were allowed to do it on filing an affidavit that their course had not been adopted for the purpose of delay, and on giving indemnity for any

damages by running the machine since the non-compliance with the order.

This case came on at an ensuing day in the term, for a further hearing as to a temporary injunction. The respondents, in the meantime, had filed an affidavit that the demurrer was not for delay, and had filed a bond that any damages during it would be indemnified against. The plaintiffs had also filed an affidavit as to the truth of the matter in the bill. Some evidence was submitted on both sides; and among that on the part of the respondents were some answers which had been prepared to the bill, as for a permanent injunction, and which had been sworn to, and were here offered as affidavits of the parties, in respect to their contents. The substance of the exceptions taken in them to the validity of the patent set up by the plaintiffs, was, that it was not original with Woodworth, several persons being named who had discovered and used it before, and that the renewals of it afterwards were obtained by misrepresentations and fraud; and that it was improperly surrendered, and improperly re-issued, with a new or amended specification. It was admitted that the machine used by Smith, one of the respondents, was owned by the Edwards's, and was the same which Rogers was, the last spring, enjoined from running. There was no evidence or admission which charged Bancroft, one of the respondents, and the motion as against him was dismissed. The evidence offered did not change the case on either side, from what has been reported in Woodworth v. Rogers [Case No. 18,018]. Several propositions were made for disposing of the motion by amicable arrangement, which were not acceded to, and need not therefore be repeated. An application was also made by the respondents to have the injunction, if imposed, continue no longer than the next term; and that the plaintiffs, in the meantime, should institute an action at law to try the validity of the patent denied by the respondents. The plaintiffs also moved to have the respondents make certain admissions as to evidence and points in respect to the suit at law, if ordered, and file security for the damages and costs which might be recovered.

THE COURT, after hearing the same counsel, at another day in the term, expressed by WOODBURY, Circuit Justice, its opinion in favor of the temporary injunction against the two Edwards's and Smith. THE COURT observed, that one runs the machine and the other two own it, and all hold under Brown, the supposed patentee. But in a bill against him, by Woodworth's assignees in Vermont, in the circuit court, after a full hearing, Brown has been enjoined against the farther use of this very machine. It would be sporting with the faith and confidence due to judicial proceedings in our own tribunals, to permit that machine to be used by any person claiming from Brown, while that injunction against him remains in full force, and the grounds of it in no way overturned. At the same time, as stated in the similar case between these complainants and Rogers at the last session here, these defendants are not prevented, and should not be, from trying their legal rights in their own appropriate cases. And though the plaintiffs, by former repeated recoveries on this patent, by extensive sales and long possession of it, and especially by succeeding in obtaining an injunction against Brown from using this very machine—are entitled to a temporary injunction against these respondents, yet it should, in the first instance, be only till the validity of the plaintiffs' title—which they deny—can be tried with them at law.

As the counsel for the respondents, who is also the counsel for Rogers, prefers that the trial be had in this case instead of that,—let that one stand continued to abide the event of this, if not in the meantime otherwise arranged. And let a suit at law be brought, before the next term, against the two Edwards's and Smith for their infringement; and if not done, the injunction now ordered against them must be then dissolved. In respect to the terms and conditions attached to this suit, the most natural and appropriate one, that the trial shall be of the validity of the patent in the present bill, under the objections set out against in the before-mentioned answers, used here as affidavits by the respondents. Let this be one condition; and another, that the suit may be in the name of any assignor or assignee, claiming an interest in this district which the respondents are alleged to have infringed. Various other conditions and restrictions are asked; and it is not unusual for courts to impose many others required by the nature of the case. See 2 Smith, Ch. Prac. 90; 2 Ves. Jr. 519; 1 Ves. Jr. 284; 2 Hare, 13, 14. But some of those asked here, as to taking a model, and as to confessions of the use of the machine, etc., are easily accomplished or obviated, as the case now stands; and too minute interference in these matters, by the court, is to be avoided if possible. Nor do I think it a case for requiring collateral security to cover damages and cost, after the oath of one of the respondents to his property being worth several thousand dollars.

It is to be hoped, on account of public considerations, that some amicable adjustment may, in the meantime, without further litigation, be effected of the controversies in respect to the validity of this patent in this district—controversies, which, after numerous decisions, still seem to multiply and require great attention to them at each term of this court, to the delay and injury of other business. We do not profess to know, or state, which of the parties are most blamable for this:—but to enjoin both to a sincere spirit of compromise, forbearance,

and peace. The rights of inventive genius, and the valuable property produced by it, all persons in the exercise of this spirit will be willing to vindicate and uphold, without colorable evasions or wanton piracies; but those rights, on the other hand, should be maintained in a manner not harsh towards other.inventors, nor unaccommodating to the growing wants of the community.

[For other cases involving this patent, see note to Bicknell v. Todd, Case No. 1,389.]