BLACK *et al.* v. HENRY G. ALLEN Co., (No. 4,718.)    SAME *v.* SAME, (No. 4,750.)   SCRIBNER *et al.* v. SAME, (No. 4,719.)

*(Circuit Court, S. D. New York.   June 26, 1890.)*

1. COPYRIGHT—INFRINGEMENT.
	A copyrighted book, published by the consent and license of the author as a part of a foreign encyclopædia, the remainder of which is the production of aliens not protected by the copyright laws of the United States, does not thereby become public property, and cannot be used without the consent of the author in a reprint of the encyclopædia.

2. SAME—PUBLIC POLICY.
	That the alien publishers of the foreign encyclopædia procured copyrighted articles from citizens of the United States for the express purpose of preventing the work from being reprinted in the United States, does not affect their right to protect the copyright in the courts of the United States.

3. SAME—ASSIGNMENT.
	An undivided interest in a copyright may be assigned.

4. SAME—INJUNCTION—VERIFICATION OF BILL.
	A bill praying for an injunction, and which is not to be used as evidence, need not be verified at the time it is signed.

5. SAME—EQUITY PLEADING.
	A bill which sets out the terms of the agreement between the author and his co-plaintiffs, the publishers, and states that, if such agreement is not an assignment, it is an exclusive license, correctly pleads publishers' title to the copyright by thus alleging the facts, and stating the conclusions therefrom in the alternative.

6. SAME—PARTIES—TITLE.
	When the legal and equitable owners of a copyright join in a complaint to enjoin its infringement, it is immaterial whether the equitable owners acquired their interest by instrument in writing or by parol.

7. SAME—AFFIDAVIT TO BILL.
	Where the bill positively avers the infringement of the copyright, it is sufficient, though it is not stated to be within the knowledge of affiant.

8. PARTIES—FOREIGN ADMINISTRATOR.
	An administrator appointed in one state cannot maintain an action in that capacity in another state unless he take out ancillary letters of administration in the latter, but such ancillary letters may be taken out after the bill is filed, and averred by amendment.

9. COPYRIGHT—DIFFERENT PUBLICATIONS.
	Each map contained in a statistical atlas need not be separately copyrighted, for they are all protected by a copyright of the entire work.

10. SAME—PAROL ASSIGNMENT.
	An inchoate right to a copyright may be transferred by parol prior to the taking of the copyright.

11. INJUNCTION—PLEADING.
	It is proper to attach to a bill praying an injunction against the infringement of a copyright copies of the infringed and infringing maps.

In Equity.   On bill for injunction.
*Rowland Cox*, for plaintiffs.

*James A. Whitney*, for defendants.

SHIPMAN, J. These are demurrers to the respective bills in equity for injunctions against alleged infringements of copyrights.

The important facts which are alleged in No. 4,718 are as follows: Four of the plaintiffs are members of the firm of Adam & Charles Black, of Edinburgh, Scotland; are aliens, and subjects of the queen of Great Britain. The fifth and remaining plaintiff is Francis A. Walker, a citizen of the state of Massachusetts and of the United States. The said firm, whose members I shall hereafter call the Messrs. Black, for the sake of brevity, are the publishers of the well-known work entitled "The Enclyclopædia Britannica, Ninth Edition," which is made up of articles or books, each of which is, in a large number of instances, an independent book or treatise. Three of the articles contained in the twenty-third volume of the encyclopædia, hereinafter referred to, have been copyrighted in the United States. One of these articles, entitled: "United States. Part III. Political Geography and Statistics," — was written by said Walker, who secured a copyright thereof, according to the provisions of the statutes of the United States, for the term of 28 years from February 13, 1888. In the several copies of every edition published the following words were inserted on the title page: "Copyright, 1888, by Francis A. Walker." On or about April 1, 1888, said Walker assigned and transferred to the Messrs. Black an interest in said copyright; "that is to say, the said Walker did assign and transfer to your orators, constituting the firm of Adam & Charles Black, the sole and exclusive right and liberty of printing, reprinting, publishing, copying, and vending, during the whole term of the said copyright, the said book, entitled: 'United States. Part III. Political Geography and Statistics,'—in connection with, and as a part of, their said twenty-third volume of their said encyclopædia, designated 'Encyclopædia Britannica, Ninth Edition,' and not otherwise; the said Walker retaining the right to print, publish, copy, and vend the said copyrighted book in every form and manner other than as a part of said Encyclopædia Britannica." The bill alleges that if said Walker did not, by said agreement, assign to the Messrs. Black an interest in said copyright, the said agreement was an exclusive and irrevocable license to them to print and sell, during the term of the copyright, the said book or article in connection with, and as a part of, said twenty-third volume. The copyrighted book was printed and sold in connection with, and as a part of, said volume. The whole of the copyright, except the right to use the subject thereof in the encyclopædia, has always remained in said Walker. The defendant has printed and sold, without the consent of the plaintiffs, said copyrighted article, in and as a part of its reprint of said encyclopædia, except that it has omitted the copyright notice upon the title-page, and threatens to continue to print and sell the same as part of its twenty-third volume. The bill alleges that the acts of the defendant are a great and continuing injury to each of the plaintiffs, and prays for an injunction, and an account of the profits arising to the defendant from the sale of said volume.

In No. 4,750, the Messrs. Black and John McAlan, a citizen of the state of New York, and administrator of the estate of the late Alexander Johnston, who was, when in life, a citizen of the state of New Jersey and of the United States, are plaintiffs. Mr. McAlan was appointed administrator by the surrogate for the county of Mercer, in the state of New Jersey. Prof. Johnston was the author of a book entitled: "United States. Part I. History and Constitution,"—and secured a copyright of the same according to the provisions of the statutes of the United States relating to copyrights. The other facts which have been stated in regard to the assignment of Walker's copyright, his title, and the acts of the defendant, exist in regard to Prof. Johnston; and the two bills are substantially like each other, *mutatis mutandis.* The difference between the cases is that in No. 4,750 a foreign administrator is the plaintiff.

The case stated in No. 4,719 is as follows: The two plaintiffs are citizens of the state of New York, and partners by the name of Charles Scribner's Sons. Two other persons, Hewes and Gannett, both citizens of the United States, were the authors of a book entitled "Scribner's Statistical Atlas of the United States," and, before depositing a printed title thereof with the librarian of congress, and before publication, assigned and transferred to the plaintiffs all their right in said book, and the right to copyright it; and the plaintiffs became the proprietors of said book. The plaintiffs printed and published the book, and on December 29, 1883, secured a copyright thereof in accordance with the provisions of the Revised Statutes, and gave notice of such copyright by inserting on the page following the title-page, in the several copies of every edition, the words, "Copyright 1883, by Charles Scribner's Sons." Afterwards the plaintiffs printed and published, and licensed others to print and publish, certain maps and charts which constituted a part of said book, but gave notice of the copyright by causing to be inscribed upon the face of each copy of every map or chart thus printed by themselves or others the words, "Copyright, 1883, by Charles Scribner's Sons." The defendant, since May 1, 1889, and without the plaintiffs' consent, published and sold a volume entitled the "Encyclopædia Britannica, Ninth Edition. Popular Reprint. Vol. 23,"—in which it printed eight maps which were copied from said copyrighted book. The bill prays for an injunction against selling copies of the book which shall contain in part said infringing maps, and for an accounting of profits.

The cause of demurrer in the two Black cases, which goes to the substance of the bills, is that they show no substantial right or equity in or on behalf of the plaintiffs, and that the acts of the defendant are not contrary to law. The point is this: Does the fact that the proprietor of a book copyrighted in this country has permitted an alien publisher of an encyclopædia to publish his book as a part of such encyclopædia enable another person, without other authority, to publish in this country the copyrighted article as a part of his reprint of such encyclopædia, the remainder of which is *publici juris?* It will not, probably, be seriously denied that a citizen of the United States who is the owner of a copyright can assign the whole of such copyright to a foreigner. "A non-resident

foreigner is not within our copyright law, but he may take and hold by assignment a copyright granted to one of our own citizens." *Carte* v. *Evans*, 27 Fed. Rep. 861. It is, however, contended that, while a copyright may be assigned as a whole by a written instrument, it cannot be subdivided, but is an entire thing, indivisible, and incapable of apportionment. The statute simply provides that the copyrights are assignable at law by an instrument in writing, and, obviously, the whole or an undivided part thereof may be assigned so that the copyright may become "the undivided property of joint owners." Drone, Copyr. 334. To what greater extent copyrights may be subdivided at law the statute does not declare, and in this case it is not necessary to inquire. Under section 4964, a license in writing, by instrument duly witnessed, may be given by the proprietor to any other person to the extent described in such license; and there is no restriction upon the power of the proprietor to assign or transfer, in equity, an exclusive right to use the copyrighted book in a particular manner or for particular purposes upon such terms and conditions as may be agreed upon. In such case the legal title remains in the proprietor; and a beneficial interest, to the extent which is agreed upon, vests in the other party, who has acquired an equitable right in the copyright, and who will be properly styled an "assignee of an equitable interest." Curt. Copyr. 225. In these two cases, as the Messrs. Black and the proprietors of the legal title are all made parties, and properly so, whether the Blacks are licensees, or are owners of an equitable interest in the copyrights, (*Goodyear* v. *Railroad Co.*, 1 Fish. Pat. Cas. 626; *Goodyear* v. *Allyn*, 3 Fish. Pat. Cas. 374,) I do not conceive it necessary to determine at this time by what name the publishers' interest in the copyright may be the more properly called.

The question is reduced to this: Does the fact that the copyrighted books were inserted by permission in an encyclopædia, as a part thereof, permit an unauthorized use of them in a reprint of such work? If a poem or an essay for which a copyright had been secured in this country by the author, a citizen of the United States, should be permitted to be inserted in a volume of poems or essays, a part of which was *publici juris*, it could not reasonably be claimed that the author had thereby abandoned his copyright, and that his book could be reprinted, by itself, without his consent, in this country. It cannot be contended that the defendant would have a right to reprint Walker's or Johnston's treatises in separate volumes without the consent of the respective proprietors. Can, then, the poem or essay be printed, without the consent of the author, as a part of an unauthorized reprint of the entire volume? The defendant takes the affirmative in these cases, because (1) the work as a whole is a foreign work, and the bulk of the volume is *publici juris;* and (2) because the insertion of Walker's and Johnston's articles in the twenty-third volume was for the manifest purpose of preventing citizens of the United States from reprinting that volume, which would have been, but for those articles, *publici juris*, and therefore was an attempt which will not receive the favor of a court of equity.

Upon the first point there is no vital difference, in regard to the in-

fringement of an author's copyright, whether it is printed in a separate volume, or in connection with authorized material. If the author has a valid copyright, it is valid against any unpermitted reprint of his book; and the fact that his book is bound up in a volume with 50 other books, each of which is open to the public, is immaterial. The argument of the defendant upon this part of the case is mainly directed in support of the second point, and is this: The Encyclopædia Britannica, as a whole, was the production of aliens, who could obtain no copyright in this country, and is a work of great value to the whole people. Except for the introduction of a few articles, which were copyrighted in the United States, it could have been reprinted here in cheap form; and the defendant, when he entered upon his undertaking, had good reason to suppose that it could be thus reprinted. The employment of citizens of the United States to write articles which were to be used in some of its volumes, and the purchase of an interest in the copyright of such articles, were an attempt to deprive the defendant, and other like-minded persons, of a privilege which they would have otherwise enjoyed, and were for the purpose of giving the foreign owners of the encyclopædia an advantage in the sales of the work in this country. The attempt contained an element of unfairness, because the book, if written by foreigners, could be reproduced here, and the complainants have only a color of copyright interest, and therefore should not receive the sanction of the courts. The statements in the preceding paragraph, with the exception that the effect of the plaintiffs' interest in the Johnston and Walker articles had an element of unfairness in it, are true, and present by themselves no adequate argument in favor of the defendant. The acts of Johnston and Walker were in accordance with the statutes of the United States. The acts of the Messrs. Black were for the purpose of making a use of the statutes which might assist them against pecuniary loss, and give them a more unobstructed field for their large commercial venture. The disputed point is whether there was an element of fraud or injustice in the scheme which would prevent a court from regarding it with favor. There was no impropriety in soliciting competent citizens of the United States to write upon its history, and I can perceive no unfairness or injustice towards the defendant company in the plaintiffs' use of the copyright laws for their pecuniary advantage, and as a weapon with which to repel a competition which is more enterprising than considerate. There was no trap set for the defendant, whose officers must have known that the ninth edition was in great part a new work, and that its contributors would not be confined to one country. It must be recollected that the question now to be considered does not relate to the extent of the decree, but whether the bills show a right to any decree; and it will be a subject for future consideration whether the prayer of the bill should be granted to its full extent.

Several objections of a more technical character are made to the bills. They are demurred to for insufficiency of the affidavits. Bills, in certain cases which are specified in the chancery text-books, are required to be verified by the oath of the party; and the New York chancery prac-

tice required that bills for injunction should be thus verified. In the federal courts, whenever a bill for an injunction is to be used as evidence either upon a motion for preliminary injunction, or in any other way, it must be verified; but there is no imperative rule requiring verification of a bill, at the time it is signed, which prays for an injunction. *Woodworth* v. *Edwards,* 3 Woodb. & M. 120; *Hughes* v. *Railroad Co.,* 18 Fed. Rep. 106.

The next alleged cause of demurrer is that the bills are uncertain and contradictory because it does not appear whether the alien plaintiffs claim as co-owners of the copyright or as licensees. The bills allege the terms of the agreement of assignment, and then say that if, by such agreement, an interest in the copyright was not assigned and transferred to the Messrs. Black, the agreement was an exclusive license. This is a correct form of equity pleading. The facts are stated, and the conclusions therefrom are stated in an alternative form.

The next point is that it does not appear that the agreements or assignments between the authors and the Messrs. Black were in writing. The bills declare, in substance, that the complainants are the only persons who have a legal or equitable title to the copyrights, and allege the nature and extent of the equitable title, and that it was acquired by assignment from the proprietors. It is further averred that the complainants are well seised of said copyright, and are the owners thereof. It is not necessary, when all the legal and equitable owners are joined, to state the formalities or the mode of conveyance by which the equitable interests became vested in the co-complainants; and, if the owner of the entire legal title is a complainant, it is immaterial whether the equitable owners became vested by an instrument in writing or by parol.

The eighth cause of demurrer is to the effect that the bill of complaint does not show that the ownership of the copyright is vested in any of the Messrs. Black. I have so fully remarked upon the theory of the bill, and of the law in regard to legal and equitable ownership of copyright, that it is not necessary to discuss this point further.

The seventh cause is that the charge of infringement is not made upon knowledge. It is made positively, as a fact, but the affidavit does not assert that the averment is within the knowledge of the affiant. The averment is sufficient, and the necessity of an affidavit has heretofore been considered.

The ninth, tenth, and eleventh points do not seem to me to require extended remark.

The defendant has also demurred in No. 4,750 upon a ground peculiar to that case, viz., that McAlan, being a foreign administrator, and never having taken out ancillary letters of administration in the state of New York, cannot sue in the courts of that state. The bill avers that he was appointed by the surrogate for the county of Mercer, in the state of New Jersey, and counts upon that appointment as his only authority. If the bill had simply averred that he was administrator, the objection could have been taken only by a plea or answer; but, when the defective title is fully shown in the bill, advantage of such defect can be taken

by demurrer. Story, Eq. Pl. § 496; 1 Daniell, Ch. Pr. 325; *Childress* v. *Emory*, 8 Wheat. 642; *Swatzel* v. *Arnold*, 1 Woolw. 383. The law upon the subject is thus declared in the syllabus of *Noonan* v. *Bradley*, 9 Wall. 394.

"An administrator appointed in one state cannot, by virtue of such appointment, maintain an action in another state, in the absence of a statute of the latter state giving effect to that appointment, to enforce an obligation due his intestate. If he desires to prosecute a suit in another state, he must first obtain a grant of administration therein in accordance with its laws."

This is not the case of a suit for infringement by an administrator to whom a reissue or an original patent had been granted. In such case the grant has been made to him, as administrator, by the government, and his title has been passed upon by the commissioner. A bill in equity by an administrator for an infringement in the life-time of the intestate owner of the patent, or for infringement occurring after his death, is for an injury to the estate of the intestate; and, although there are decisions to the contrary, such a bill seems to me to fall within the general rule, and to require the foreign administrator to take out letters in the state in which he brings suit. It is true that the statute vests the title of the intestate in his administrator; but the point of the objection is that a foreign administrator is not recognized as administrator, when he sues in that capacity, unless appointed by the courts of the state within which suit is brought. But, as said by Mr. Justice MILLER in *Swatzel* v. *Arnold*, *supra:* "The impediment to the exercise of the full power of an administrator in a jurisdiction foreign to that granting his letters is essentially technical and formal, and should not be strained beyond its necessary application." The courts early found relief, in cases of equity, from too strict adherence to technicality upon the ground that "in equity a plaintiff may file a bill as administrator before he has taken out letters of administration, and it will be sufficient to have them at the hearing, which is not the case at law." 1 Daniell, Ch. Pr. 327. Therefore, in *Humphreys* v. *Humphreys*, 3 P. Wms. 349, where the next of kin had brought a bill without administering, and the defendant demurred, the lord chancellor allowed the demurrer, and then permitted the complainants to take out letters of administration, which, when granted, he said, related to the time of the death of the intestate, and to allege the same by way of amendment or by supplemental bill. The case of *Swatzel* v. *Arnold*, *supra*, was on this wise: An administrator appointed in Kansas brought a bill in equity, in a court of Nebraska, for a foreclosure of a mortgage belonging to the estate of the intestate. The court sustained a demurrer upon the ground that the foreign administrator had taken no ancillary letters. The case having come into the United States circuit court, and the complainant having taken out letters in Nebraska, Mr. Justice MILLER permitted an amendment upon the authority of *Humphreys* v. *Humphreys*. The substance of his decision is that "an administrator appointed in one state, like an executor who has not proved the will, may sue in the courts of another before he has letters therefrom, and, having obtained letters, may aver the fact by

amendment," before answer filed, and after demurrer. "He has an interest in the subject-matter, although he has no standing in court, and for that reason may support his suit, in order to defend his right, by authority afterwards acquired." To the same effect are *Bradford* v. *Felder*, 2 McCord, Eq. 168; *Blackwell* v. *Blackwell*, 33 Ala. 57; and *Giddings* v. *Green*, 4 Hughes, 446.

Upon this point the demurrer in No. 4,750 is sustained, with leave to the complainants to amend, if ancillary letters of administration shall be taken out in the state of New York, within 30 days after the date of the order upon the demurrer.

In No. 4,719 additional and different reasons of demurrer are relied upon. The principal new causes are that the alleged assignment of the inchoate right is not averred by the bill to have been in writing, and that it is clear upon the face of the bill that the reprinted maps were never legally copyrighted by the complainants. The position of the defendant is that an atlas is a bundle of maps; that there is no such thing as a manuscript of a map, and therefore the manuscript cannot be transferred to the assignee; and, furthermore, that every assignment of an inchoate right before copyright is obtained must be in writing. The alleged invalidity of the copyright is upon the ground that the book or atlas was copyrighted, whereas it is said that each map should have been copyrighted. A statistical atlas is a book of maps, tables, and printed text, and is not simply a bundle of maps, and is properly copyrighted as a whole. There was no necessity of copyrighting separately each map in the book. The unauthorized reprinting of eight maps from this volume, it being alleged that all of them were originated and prepared by the authors, is an infringement of the same character as the reprinting of original statistical tables or other printed matter. An inchoate right to a copyright may, prior to the taking of the copyright, be transferred by parol. *Lawrence* v. *Dana*, 4 Cliff. 1; *Callaghan* v. *Myers*, 128 U. S. 658, 9 Sup. Ct. Rep. 177. The other additional points referred to the averments of the bill in regard to the plaintiffs' licenses, and to the propriety of attaching to the bill the maps as exhibits. The pleader attached to the bill copies of the infringed and of the infringing maps, as part thereof. His course in regard to these two particulars was proper.

The demurrers in Nos. 4,718 and 4,719 are overruled. The demurrer in No. 4,750 is sustained, with leave to amend as hereinbefore stated.