Stefan Sebastian BRECHT, Plaintiff,

v.

Eric BENTLEY, Lee Paton, David Brooks, Robert Welber and Katina Paxinou, Defendants.

United States District Court
S. D. New York.
July 27, 1960.

Hays, St. John, Abramson & Heilbron, New York City, for plaintiff; Irwin Karp, New York City, of counsel.

Wittenberg, Carrington & Farnsworth, New York City, for defendant, Eric Bentley; Philip Wittenberg, New York City, of counsel.

Otto M. Bonaparte, Brooklyn, N. Y., for defendants, Lee Paton and Robert Welber.

Leonard Adler, Brooklyn, N. Y., for defendant, David Brooks.

FREDERICK van PELT BRYAN, District Judge.

Plaintiff Stefan Sebastian Brecht, alleging himself to be the equitable owner of the copyright of the German play by his father Bertold Brecht known in English as "Mother Courage", sues under the Copyright Act, 17 U.S.C. § 1 et seq. to enjoin defendants from carrying out announced plans to produce the play in New York.

The defendants served with their answers a notice to take the plaintiff's deposition and his deposition was taken. In the meantime plaintiff served notices to take the depositions of the defendants. Immediately after the plaintiff's deposition was completed and signed the defendant Bentley moved for summary judgment pursuant to Rule 56, F.R.Civ. P., 28 U.S.C., and the other defendants joined in that motion. Plaintiff had had no opportunity to take the defendants' depositions or any other depositions he needed in support of his own case.

Both sides have submitted voluminous affidavits and exhibits on the motion for summary judgment. Defendants also rely to some extent on the deposition taken of the plaintiff. In the light of the issues raised by the affidavits and the lack of opportunity given the plaintiff to take depositions in support of his case, it is plain that the motion for summary judgment must be denied.

It would serve no useful purpose to discuss in detail the complicated facts thus far before the court because they are still incomplete. I will merely point out respects in which the defendants have failed to sustain their burden of showing that there is no genuine dispute as to material facts which requires a trial and that they are entitled to judgment as a matter of law. (Rule 56.)

Very briefly stated, the controversy between the parties involves the defendants' plans to produce and stage the defendant Bentley's translation into English of the German play "Mutter Courage und ihre Kinder, eine Chronik aus dem dreissegharhegen Krieg" by the late Ber-

told Brecht, the well known German playwright and the father of plaintiff Stefan Brecht.

Bertold Brecht wrote the play some time before 1940. In February of 1940 a copy of the play in German (which until then had not been reproduced for sale) was deposited in the United States Copyright Office with a claim of copyright in the name of Teaterforlag Arvid Englind of Stockholm, Sweden, a Swedish theatrical agency. A certificate of registration on the unpublished work was issued. (See 17 U.S.C. § 12.)

Subsequently there were several publications of the play in Europe and two English translations were published in the United States, one in 1941 by H. R. Hays, and one in 1955 by defendant Bentley. Separate notices of copyright were filed for each of the two English translations. The European versions in German which plaintiff claims are different from the text copyrighted in the United States in 1940, bear differing claims of copyright with the exception of one which bears no claim of copyright at all.

It is plaintiff's position that he is the equitable owner of the copyright obtained in the name of Englind in 1940, having succeeded to part ownership on the death of his father in 1956 and holding assignments from all of his father's other heirs of their interests. He asserts that there was either an express or an implied arrangement between Englind and his father by which the American copyright was registered in Englind's name for Bertold Brecht's benefit. Englind, subsequent to the commencement of this action, executed an assignment of that copyright to defendant Bentley, for a cash consideration plus a small royalty.

The motion for summary judgment rests on a variety of alternative theories which will be discussed separately.

### 1. The ownership of the 1940 copyright.

■■ Defendants urge that they are entitled to judgment because there is no evidence that Bertold Brecht was the equitable owner of the 1940 American copyright and that therefore the plaintiff has no standing to sue under 17 U.S. C. §§ 101, 112.[1]

The circumstances under which Englind obtained the unpublished copyright in 1940 are obscure. At about the time that Englind filed the American claim of copyright Bertold Brecht and Englind entered into an agency contract concerning production rights of "Mother Courage" (and another play) in a number of European countries. This contract was to run for ten years from its execution in February 1940. There appears to be no written agreement concerning copyright of the play in the United States. It seems unlikely, however, that simultaneously with the grant of limited production rights to Englind by formal written agreement Brecht would grant the ownership of the play itself to Englind by parol. There is at least one written statement by Englind which disclaims ownership of the copyright (in the equitable sense) and at most seems to claim a lien on it for money owing from Bertold Brecht. Plaintiff's theory that Englind merely acted on behalf of Brecht in obtaining copyright here seems to have at least some support. Cf. Tams Witmark Music Library, Inc. v. New Opera Co., 298 N.Y. 163, 170–171, 81 N.

---

[1] Defendants also advance the extraordinary theory that if an author proprietor dies during the original term of the copyright the work is in the public domain until the right to renewal accrues at the expiration of the original term when named successors in interest may apply for renewal. (Section 24.) It may be that the statute is not artfully drafted. But it seems plain to me that Section 28 of the Copyright Law which expressly provides that a copyright may be bequeathed by will must be read to include intestate succession. Defendants' theory would lead to an absurd result which could not have been intended by Congress.

E.2d 70. On the other hand, Englind purported to assign the copyright to Bentley.[2]

Plainly these issues cannot be resolved on this motion. Plaintiff is entitled to take depositions or obtain affidavits. There are entirely too few facts on which to reach a final decision. See Rule 56(e), F.R.C.P.

## 2. The statute of frauds.

Defendants assert that whatever the arrangement between Bertold Brecht and Englind, plaintiff is barred from establishing a trust in Brecht's favor because of § 31[3] of the New York Personal Property Law, McKinney's Consol.Laws, c. 41, (part of the New York Statute of Frauds).

Apart from the fact that Section 31 does not apply to an express parol trust (Blanco v. Valez, 295 N.Y. 224, 66 N.E.2d 171) it is doubtful whether New York would invalidate a foreign trust if valid where it was created. Cf. Hutchison v. Ross, 262 N.Y. 381, 187 N.E. 65, 89 A.L.R. 1007; Shannon v. Irving Trust Co., 275 N.Y. 95, 9 N.E.2d 792.

Moreover, where there is a constructive or resulting trust imposed by law for breach of a fiduciary obligation the Statute of Frauds does not apply. Golland v. Golland, 84 Misc. 299, 147 N.Y. S. 263 (Cardozo, J.); Coleman v. Mulligan, Sup., 66 N.Y.S.2d 696.

Plainly it is impossible to determine whether the statute has any application in the present state of the record.

## 3. Plaintiff's capacity to sue.

The defendants urge that plaintiff is without capacity to institute this action because there has been no administra-

tion of Bertold Brecht's estate in New York.[4]

In this equitable action the failure to have administration in New York would in any event be a technical defect remediable during the pendency of the action. Black v. Henry G. Allen Co., D. C.S.D.N.Y., 42 F. 618, 9 L.R.A. 433. Here, however, plaintiff claims that his rights became vested under the laws of East Germany, his father's last domicile.

I see no reason why the law of succession of decedent's domicile should not govern such questions. See Du Roure v. Alvord, D.C.S.D.N.Y., 120 F.Supp. 166. I am not persuaded by defendants' contention that a copyright may not descend under the laws of the decedent's foreign domicile. It by no means follows that because a proprietor under American Copyright Law is given no rights against an infringing foreign publication that his rights of ownership may not descend by the law of a foreign domicile. Cf. De Sylva v. Ballantine, 351 U.S. 570, 76 S.Ct. 974, 100 L.Ed. 1415; Boyd v. Curran, D.C.S.D.N.Y., 166 F.Supp. 193.

## 4. Statute of limitations and laches.

Defendants assert that the action is barred by laches or the three year statute of limitations contained in the Copyright Act (17 U.S.C. § 115) or alternatively by the applicable New York statute of limitations.

They have wholly failed to establish laches.

It seems clear that there is no infringement alleged which is time barred by the three year copyright statute of limitations. In fact the infringement is prospective only. If the New York statute is in any way relevant the ten year

2. This assignment was executed after commencement of this litigation when the defendants had full knowledge of plaintiff's claim to equitable ownership.

3. New York Personal Property Law, § 31: "Every agreement, promise or undertaking is void, unless it or some note or memorandum thereof be in writing, and subscribed by the party to be charged

therewith, or by his lawful agent, if such agreement, promise or undertaking;
   *      *      *      *      *
"8. Is a contract to establish a trust;
* * *."

4. The plaintiff holds assignments from all other possible heirs of his father of whatever interests they may have.

provision contained in Section 53 of the Civil Practice Act would apply.[5] Though this is not now an action to impress a constructive trust, if it were the cause of action would not accrue until the time that Englind first asserted rights in the copyright to the exclusion of the interest now claimed by plaintiff through his father. Pagano v. Pagano, 207 Misc. 474, 139 N.Y.S.2d 219, affirmed 2 A.D.2d 756, 153 N.Y.S.2d 722.

### 5. Compliance with the Copyright Act.

On this branch of their motion the defendants point to the multiple publications of the work in its various forms and assert that the protection afforded by the unpublished 1940 registration has been voided by the later publications. It is claimed that this is because these later publications either contain year dates subsequent to 1940, or in two cases no year date at all. See 17 U.S.C. §§ 12, 13, 10, 19.

■ Plaintiff, in turn, claims *inter alia* that the notices of copyright (in those publications which contain a notice) do not affect his original copyright because such publications were "new works" within § 7 of the Copyright Act, and were thus entitled to separate copyrights.

■ As to the two different English translations, plaintiff's position is undoubtedly correct. The Copyright Office regulations on which defendant relies (37 C.F.R. 202.2, Oct. 27, 1959)[6] have reference only to a subsequent publication of the work upon which unpublished copyright was secured. Translations, however, are new works and the year date required in such cases is the year of publication of such new work, not the year of registration of the prior unpublished work. Adventures in Good Eating v. Best Places to Eat, 7 Cir., 131 F.2d 809; Wrench v. Universal Pictures Co., D.C.S.D.N.Y., 104 F.Supp. 374, 375.

It is impossible on the record now before me to determine whether the various foreign language editions published abroad were "new works" subject to separate copyright, as plaintiff insists. Cf. Arnstein v. Porter, 2 Cir., 154 F.2d 464. Nor is there sufficient before me to pass on other considerations by which the effect of the foreign publications might be gauged. See 17 U.S.C. § 21; Heim v. Universal Pictures Co., 2 Cir., 154 F.2d 480; Houghton-Mifflin Co. v. Stackpole Sons. Inc., 2 Cir., 104 F.2d 306.[7]

### 6. The extent of Bentley's authorization by Bertold Brecht.

Defendant Bentley contends that he translated and secured copyright on his translations with Brecht's consent. This may be so and the course of dealings between Bertold Brecht and Bentley makes it not unlikely. However, whether Bertold Brecht conveyed the full rights to translate and perform granted by 17 U.S.C. § 1 (assuming he owned them) cannot be decided on this motion. Plaintiff presents evidence (letters from Bentley to Bertold Brecht) indicating that Bentley himself never considered that he owned performance rights. These letters were written long after Brecht agreed to permit Bentley to translate and *offer* the play for production, which is the permission which Bentley relies on here. The whole transaction poses issues of fact which require trial.

Defendants' motion for summary judgment is denied.

It is so ordered.

---

5. Section 53 provides: "An action, the limitation of which is not specifically prescribed in this article, must be commenced within ten years after the cause of action accrues."
    Actions to impose constructive trusts fall within this section. See Scheuer v. Scheuer, 204 Misc. 968, 126 N.Y.S.2d 440, affirmed 283 App.Div. 1118, 132 N.Y.S.2d 335.

6. See Howell, The Copyright Law, (3d ed., pp. 107–8).

7. I do not even consider at this stage of the litigation the difficult legal questions as to the effect of Art. III(1) of the Universal Copyright Convention on these cases and on the facts of this case.