PENNSYLVANIA DIAMOND-DRILL Co. *v.* SIMPSON and another.

*(Circuit Court, W. D. Pennsylvania.* August 30, 1886.)

1. PATENTS FOR INVENTIONS—INFRINGEMENT—PRIORITY OF INVENTION—WHAT CONSTITUTES—ROTARY DRILLS.

Robert Allison, in 1870, conceived of the invention described in his patent, No. 261,978, for an improvement in rotary drills, dated August 1, 1882, and made rough sketches thereof, but no model or machine, and did not consider the invention worth putting into a permanent form, and did not apply for a patent until May 4, 1882, after Ball and Case, subsequent, but independent, inventors of the same improvement, had obtained patents therefor, dated October 4 and November 1, 1881, and had put the patented article on the market. *Held,* that rightful priority of invention was to be adjudged to Ball and Case.

2. SAME—CONCEPTION, UNLESS FOLLOWED SEASONABLY BY PRACTICAL STEPS, NOT INVENTION.

A mere conception, not seasonably followed by some practical step, counts for nothing as against a subsequent independent inventor, who, having complied with the patent laws, has obtained his patent.

3. SAME—NEGLECT TO OBTAIN PATENT FOR TWELVE YEARS.

One who has conceived of a new device, and proceeded so far as to embody it in rough sketches, or even in finished drawings, cannot there stop, and yet hold that field of invention against all comers for a period of 12 years.

4. SAME—TESTIMONY AS TO FACT OF INVENTION.

In an interference proceeding in 1873, upon a different invention of the same general character, Allison had testified to making the invention here in question; but this testimony did not constitute invention, any more than did his previous sketches.

5. SAME—PLEADING—QUESTION OF PRIORITY, HOW RAISED.

It was sufficient to raise the question of priority of invention for defendants in their answer to deny that Allison was the original and first inventor, and to justify under the Ball and Case patents, without alleging abandonment by Allison.

6. SAME—CORE-LIFTERS.

Letters patent No. 147,492, granted to Gideon Frisbee, February 17, 1874, for core-lifters, *held* valid, and infringed by defendants.

7. SAME—INFRINGEMENT—SIMILAR OPERATION—DIFFERENT CONSTRUCTION.

Where the claim of the Frisbee patent is for the combination of an annular core-lifter and a tube with an inner tapering recess, and the patent described a loose, elastic cut ring, within a tapering recess in a boring tube, and the defendants use a loose, solid, unelastic ring, in a cylindrical recess in a boring tube, but this ring had four dependent springs, with grasping jaws arranged in an annular position, and equidistant, which are forced into a tapered drill-head at the lower end of the recess, and the purpose and mode of operation of the two devices are similar, *held,* that the difference of construction is not material, and the claim is infringed.

8. SAME—FAILURE AS TO PART OF COMPLAINANT'S CASE—DECREE—APPORTIONMENT OF COSTS.

Where the suit fails upon one patent, and prevails upon another, the complainant is entitled to a decree; but the costs should be equitably apportioned.

In Equity.

*G. G. Frelinghuysen* and *W. Bakewell,* for complainant.

*E. T. Rice* and *George H. Christy,* for respondents.

ACHESON, J. The bill of complaint, as it now stands, charges the defendants with the infringement of two patents, viz.: letters patent No.

261,978, for an improvement in rotary drills, granted to Robert Allison, August 1, 1882, on an application filed May 4, 1882; and letters patent No. 147,492, for an improvement in core-lifters for annular rock-drills, granted to Gideon Frisbee, February 17, 1874,—of which patents the plaintiff is assignee.

1. That the improvement which is the subject-matter of this Allison patent is of patentable novelty is not controverted, and, for the purposes of the case, will be assumed. The proofs disclose the use by the defendants of prospecting drills, manufactured by the Sullivan Machine Company, and equipped with a single-cylinder hydraulic feed device, constructed under two patents granted to Albert Ball and George F. Case, one dated October 4, 1881, No. 247,872, and the other dated November 1, 1881, No. 248,982, issued on applications made August 8, 1881. And the further fact appears that the invention described in and embraced by the Allison patent is also described in and covered by the Ball and Case patents.

In the view, then, I take of this branch of the case, the controlling question is one of rightful priority of invention, as between the Allison patent, on the one hand, and the Ball and Case patents, on the other. And, notwithstanding the criticisms indulged in by the plaintiff's counsel upon the frame of the answer, that question is, I think, distinctly raised thereby; for it expressly denies that Allison was the first and original inventor of the improvement in rotary drills here involved, and it sets up the prior patents of Ball and Case in justification of the defendants' use of the device. True, the answer does not allege abandonment; but, then, the defendants do not rely on the statutory defense of abandonment to the public. Lawful priority for the Ball and Case patents is what is asserted. And that the answer was understood by the plaintiff as so averring is not doubtful; for, as part of its case in chief, proofs were introduced to carry back Allison's invention to a date anterior to the applications of Ball and Case. These proofs, it must be conceded, establish that, as early as the year 1870, Allison had conceived the idea of the invention set forth in his patent of 1882, and also two other kindred improvements in the same class and kind of machinery. One of these latter improvements was a single-cylinder machine for drilling short holes, and the other was a two-cylinder hydraulic feed mechanism for revolving drills. For the last-mentioned mechanism Allison obtained letters patent No. 145,775, dated December 23, 1873, after a decision in his favor in an interference declared between him and Brodie and Wheeler. In that interference proceeding, Allison, on March 19, 1873, made a deposition, in which, although the issue only involved the two-cylinder hydraulic feed device, he mentioned his conception of the two other devices; producing a drawing, now an exhibit in this case, of his single-cylinder device for drilling short holes. And then, referring to the particular device now in dispute, he testified that he had conceived the idea of such invention, which he described in his deposition as "a single-cylinder machine, with a hollow piston-rod, through which the drill passed, for drilling deep holes."

The evidence now adduced shows that, in the year 1870, Allison made rough sketches of this device,—some pencil sketches, and some with chalk, on a drawing board,—none of which, however, were preserved. But he made no model thereof, and he never made the device itself. Beyond his rough sketches he advanced not a step. He did nothing to put his invention in a fixed and practical form. Indeed, in his testimony here, he states that he did not originally consider the invention of consequence enough to reduce it to a more permanent shape. He did not apply for a patent until many months after Ball and Case had made the device, and obtained their letters patent, and the market was being supplied with machines equipped with the patented device; and, even then, his application was made at the solicitation of the plaintiff, the assignee of his patent of 1873, and because the value of that patent was involved.

According to my apprehension of the proofs, the device in question is quite distinct from the single-cylinder machine for drilling short holes, already mentioned as one of the three kindred inventions of which Allison had conceived in the year 1870. But, at any rate, all that Allison is shown to have done with respect to *that* invention was to embody it in the drawing now in evidence. His statement as to a model thereof having been used in the interference issue, is qualified and much weakened by his cross-examination. There is no satisfactory proof of the existence of such model, and it is certain that no such machine for drilling short holes was ever made by him.

Under the proofs, Ball and Case, undoubtedly, must be taken to have been original and independent inventors of the device in controversy. Nothing whatever to the contrary appears. The suggestion that, by reason of their mere casual knowledge of the Allison patent of 1873, they must be deemed to have had constructive notice of the contents of Allison's deposition, taken in the interference issue between him and Brodie and Wheeler, is wholly untenable. Ball and Case were entire strangers to that controversy. They never had any sort of interest in, or connection with, the patent of 1873, and there was no occasion or reason for inquiry on their part.

After completing their invention, Ball and Case were prompt to apply for letters patent, and, by the Sullivan Machine Company, their assignee, were commendably diligent in furnishing the public with machines equipped with the device. As against the Ball and Case patents, then, will the law adjudge priority of invention to Allison? The answer is not doubtful under the authorities. In a race of diligence between two independent inventors, he who has first perfected and adapted the invention to actual use is entitled to the patent. *Agawam Co.* v. *Jordan,* 7 Wall. 583; *Whitely* v. *Swayne,* Id. 685. Here, Allison, it would seem, was the first to conceive the invention; but mere conception, which is not seasonably followed by some practical step, counts for nothing as against a subsequent independent inventor, who, having complied with the patent laws, has obtained the patent. It would indeed be a strange perversion of the purpose of the patent laws if one who had conceived of a new

device, and proceeded so far as to embody it in rough sketches, or even in finished drawings, could there stop, and yet hold that field of invention against all comers for a period of 12 years. The law does not so reward supineness. Hence, in *Reeves* v. *Keystone Bridge Co.*, 5 Fish. 456, 463, Judge McKennan declared the established rule to be "that illustrative drawings of conceived ideas do not constitute an invention, and that, unless they are followed up by a seasonable observance of the requirements of the patent laws, they can have no effect upon a subsequently granted patent to another." And this principle was enforced by Mr. Justice Matthews in the more recent case of *Detroit Lubricator Manuf'g Co.* v. *Renchard*, 9 Fed. Rep. 293, although the antedating drawing there exhibited a perfect machine in all its parts.

I cannot see that Allison's interference deposition can influence the result here. The interference issue, as we have seen, only related to, and affected the right to, the invention for which the patent of 1873 was granted; and Allison's sworn statement, concerning his other conceived ideas, no more constituted invention, within the meaning of the patent laws, than did his previous sketches. In an earlier contest for priority, that deposition might have proved valuable as fixing the date of his conception, but, by his long-continued inaction, he lost whatever inchoate right he once may have had. As respects the Allison patent, therefore, the plaintiff's bill must fail.

2. We pass now to a consideration of the other branch of the case; and here the only question is whether infringement has been shown. The Frisbee invention consists in a combination of an exterior pipe or ring, constructed with a tapering recess in its inner surface, and a ring or annular wedge inserted in that recess, and which, as the drill advances, slides over the core, but is wedged against it by the withdrawal of the drill. The specification describes an annular core-lifter, consisting of a cut ring of steel sprung into the recess, this ring being tapered outside to fit the recess, and having projections on its inner surface between which the ring is filed thin, so as to be elastic, the projections having small pieces of bort or carbon set in their faces, to prevent them from being worn by the work. The described operation is this, viz.: As the bit excavates the rock, and the core enters the core-lifter, the latter first becomes stationary on the core, and is then forced over it by the shoulder of the recess, the exterior pipe or tubular rod revolving round the core-lifter till the required depth is reached. When the drill-rod is withdrawn, the core-lifter is forced towards the small end of the recess, clamping the core more firmly as the pipe or tube recedes, until it detaches the core from the solid rock. The specification states that, instead of the thin ring with projections, an annular wedge may be used, made in two pieces, fitting the tapered recess; but this form of core-lifter is not illustrated by the drawings, or further explained.

The claim of the patent is in these words: "The combination, operating substantially as described, of an annular core-lifter, and a tube or ring constructed with a tapering recess in its inner surface."

Without pausing to point out the marked distinctions between this in-

vention and all previously known core-extractors, I content myself with simply saying that the Frisbee invention is one of decided originality, and the patent well deserves to be so construed as to afford to the inventor and his assignee the amplest protection against devices, which, however greatly differing in form, yet copy the principle of the invention, or its mode of operation. No reason here exists for limiting the patent to the particularly described form of grasping device; for the claim is not for any specified form, but for the combination of an annular corelifter and a tube or ring constructed with a tapering recess in its inner surface, "operating substantially as described."

The defendants' core-lifting device complained of consists of a solid ring of metal, provided with four depending springs or grasping-jaws, arranged in an annular position, and equidistant. This ring, with its depending springs or jaws, is placed in a recess formed in the tubing just above the drill-head. Between the annular shoulder, at the upper end of this recess, and a lower shoulder formed by the top of the drill-head, the recess is cylindrical; but from this lower shoulder downwards, for the distance of about one-half inch, the interior of the drill-head gradually decreases in diameter, or is tapered in its inner surface. During the work of boring, the depending springs or jaws hug the core, but permit it to pass through them, the ring being pressed up under the upper shoulder of the said recess, and, the diameter of the cylindrical recess being somewhat greater than that of the core-barrel above it, and of the drill-head below it, the tubing can revolve round the core-lifter. But when the desired depth is reached, and the drill-rod is withdrawn, the ring descends, and its springs or jaws are forced into the tapered part of the recess, and are wedged tightly against the core, clasping it more firmly as the drill-rod is drawn upwards, until the core is broken off.

Now, while it cannot be gainsaid that to the eye these two described core-lifting devices present some striking dissimilarities, yet, in my judgment, the differences are in matters of form, and not of substance. Both act upon the same principle, in substantially the same way, and produce the same result. There is evidence showing that the designer of the defendants' core-lifter had first made a study of Frisbee's invention. The changes he has effected, doubtless, display some ingenuity, but they are, I think, colorable and unavailing.

I need scarcely add that the plaintiff, having shown infringement by the defendants of the Frisbee patent, will not fail of relief on this bill, because, as to the other patent sued on, the conclusion of the court is favorable to the defendants. *Matthews* v. *Lalance & Grosjean Manuf'g Co.*, 17 O. G. 1284; S. C. 2 Fed. Rep. 232. There must, however, be some equitable apportionment of the costs of suit, which can be settled when the decree is signed.

Let a decree be drawn by counsel.