CAMPBELL et al. v. BAYLEY et al.

(Circuit Court of Appeals, Seventh Circuit. January 20, 1894.)

No. 14.

1. INVENTION—MANUFACTURE.
   A device, in order to be patentable, must be novel, whether it be deemed to be a manufacture or a machine (Rob. Pat. §§ 182, 185, note), within the meaning of the patent law, and the test of novelty would seem to be essentially the same in the one instance as in the other.

2. PATENTS FOR INVENTIONS—CATCH BASIN COVERS.
   The first claim of letters patent No. 204,882, issued June 18, 1878, to George G. Campbell, for a catch-basin cover constructed with a slanting front, grate bars, and raised partition, is void for want of invention.

Appeal from the Circuit Court of the United States for the Eastern District of Wisconsin.

Suit by Gardiner Campbell and George G. Campbell against James E. Bayley, Arthur J. Bayley, and Harry F. Bayley for injunction and accounting. Defendants obtained a decree. 45 Fed. 564. Complainants appeal.

Suit by the appellants against the appellees for an accounting, and to enjoin infringement of the first claim of letters patent No. 204,882, issued June 18, 1878, to George G. Campbell, one of the appellants, for certain improvements in catch-basin covers. The specification and claims of the patent are of the following tenor:

"My invention has for its object the providing of a catch-basin for the corner of streets, which the following description will more fully show: Fig. 1 is a perspective view of my invention, and Fig. 2 a sectional view of the same. In the drawings, A is the body of the catch-basin cover; B, the base of the same; C, C, flanges secured to the base and body for the purpose of holding the stone or other material back to the sidewalk which may be used in setting the cover; D, strips of metal standing obliquely over the opening, to keep rubbish out of the basin as the water flows into the same; E, a raised stop or partition in front of the strips, D, for the pavement to face up against; F, a flange projecting below on the under side of the cover to keep the water from wearing away the mortar between the bricks or stones which the basin may be made of; G, an opening, with cover to the same, for access to the basin. This device is calculated to stand at the corner of a street and jut back into the sidewalk, and the front stands slanting, the bottom part of it projecting to the bottom of the gutter, so that a team in passing, if it hugs too close to the sidewalk, the wheels will strike on the strips of metal, D, and slide down off the same, and the base, B, will be under the sidewalk and paving, so that the basin cover will be held firmly

in place. What I claim as new, and desire to secure by letters patent, is: (1) A catch-basin cover constructed with slanting front, with strips, D, base, B, and raised partition, E, substantially as specified. (2) A catch-basin cover, with body, A, flanges, C, C, and flange, F, substantially as specified."

The drawings referred to are as follows:

The defense relied upon is lack of invention or patentable novelty, and in support thereof the following references are made to the prior art: "No. 32,008, granted to William H. Short, for an improved inlet to sewers, April 9, 1861. No. 109,067, granted to Henry Smith, Jr., for sewer catch-basin covers, November 8, 1870. No. 124,061, granted to Abel G. Hodgman, for water courses across roadways, February 27, 1872. No. 125,118, granted to William H. Chase and George White, for cover and trap for sewer basins, April 2, 1872. No. 132,757, granted to Edward L. Dyer, for sewer basins, November 5, 1872. No. 134,978, granted to Henry W. Clapp, for grating for sewer inlet, January 21, 1873. No. 149,873, granted to Henry W. Clapp, for grating for sewer inlet, April 7, 1874. No. 150,072, granted to Ernest L. Meyer, for sewer basins, April 27, 1874. No. 153,425, granted to Ephraim B. Culver, for removable trays for sewer traps, July 28, 1874. No. 167,444, granted to Daniel H. Fernald, for manhole cover for sewers, September 7, 1875. No. 169,551, granted to Louis Johnes, Jr., for sinks, November 2, 1875. British patent No. 255, of 1874, to Wellington Henry Synge, dated January 20, 1874."

The opinion of the court below is reported in 45 Fed. 564.

Erwin & Benedict and John G. Elliott, for appellants.

H. G. Underwood, for appellees.

Before WOODS, Circuit Judge, and BUNN and SEAMAN, District Judges.

WOODS, Circuit Judge (after stating the facts). We concur in the opinion of the circuit court. The argument here in behalf of the appellants rests mainly upon the proposition, apparently not presented below, that the patent in suit is for a manufacture, and therefore entitled to a more liberal construction or treatment in respect to the question of aggregation of parts than if the invention were a machine. The distinction is stated in Robinson on Patents (section 185, note), but the definitions attempted can hardly be deemed clear enough for practical application. In many

cases it would be difficult, if not impossible, to determine satisfactorily whether an article is of one class or the other. Broadly speaking every machine is a manufacture, though not every manufacture is a machine. By the general definitions given in section 182 of the work named, the catch-basin cover with which we are dealing is strictly neither one nor the other, and perhaps may as well be called by either name. The section reads as follows:

"A manufacture is an instrument created by the exercise of mechanical forces, and designed for the production of mechanical effects, but not capable, when set in motion, of attaining by its own operation to any predetermined result. It has no inherent law which compels it to perform its functions in a given method, but receives its rule of action from the external source which furnishes its motive power. In this absence of 'principle' or 'modus operandi' lies the distinction between a manufacture and a machine,—the former requiring the constant guidance and control of some separate intelligent agent, the latter operating under the direction of that intelligence with which it was endowed by its inventor when he imposed on it its structural law."

The cover for a catch-basin can hardly be said to be set in motion or to receive its rule of action from an external source of motive power, and certainly not to require the guidance and control of an intelligent agent. On the contrary, it would be more accurate to say that it operates without guidance, under the direction or in accordance with the structural law imposed upon it by its designer. It performs its functions, necessarily, in a given method, and accomplishes predetermined results. But whether, within the meaning of the patent law, a device should be deemed to be a manufacture or a machine, in order to be patentable it must be novel; and by the decided cases the test of novelty would seem to be essentially the same in the one instance as in the other. "Nothing short of invention or discovery will support a patent for a manufacture, any more than for an art, machine, or composition of matter," said Justice Clifford, in Glue Co. v. Upton, 4 Cliff. 237, Fed. Cas. No. 9,607, and the same expression is repeated in Collar Co. v. Van Deusen, 23 Wall. 530, 563, in context with the following pertinent statement:

"Articles of manufacture may be new in the commercial sense when they are not new in the sense of the patent law. New articles of commerce are not patentable as new manufactures, unless it appears in the given case that the production of the new article involved the exercise of invention or discovery beyond what was necessary to construct the apparatus for its manufacture or production."

To the same effect are the decisions and discussions in the Wood Paper Patent Case, 23 Wall. 566; Cochrane v. Badische Anilin & Soda Fabrik, 111 U. S. 293, 311, 4 Sup. Ct. 455, and Reckendorfer v. Faber, 92 U. S. 347. Nothing could be more certainly a mere manufacture or instrument, as distinguished from a machine, than the rubber-tipped pencil which was the subject of the last-cited case. It was so treated by counsel and by the court, and yet the combination was held to be merely an aggregation. In the course of the opinion it is said:

"An instrument or manufacture which is the result of mechanical skill merely is not patentable. Mechanical skill is one thing, invention is a dif-

ferent thing. Perfection of workmanship, however much it may increase the convenience, extend the use, or diminish the expense, is not patentable. The distinction between mechanical skill, with its conveniences and advantages, and inventive genius, is recognized in all the cases. * * * The combination, to be patentable, must produce a different force or effect, or result in the combined forces or processes, from that given by thier separate parts. There must be a new result produced by their union. If not so. it is only an aggregation of separate elements."

If these propositions are applicable to "the combination of the lead and india rubber, or other erasing substance, in the holder of a drawing pencil," they are applicable to the catch-basin cover now in question, and to the parts of which it is made up. The only new feature claimed for it in argument was the oblique bars, and, in order to distinguish those from the bars in the Synge device, designed for a strictly analogous use, the suggestion was ventured that in that structure the bars are hinged at the upper end, and, being unattached at the lower end, are capable of being lifted,—a suggestion which implied, and, indeed, was followed by the assertion, in answer to a question from the bench, that a catch-basin cover in all other respects like that of the patent would not infringe if made with bars hinged at the top and unattached below. It is evident that patentability cannot depend on such distinctions. The decree below should be affirmed.