## ANTISDEL v. CHICAGO HOTEL CABINET CO.

(Circuit Court of Appeals, Seventh Circuit. October 3, 1898.)

### No. 498.

1. PATENTS—SUIT FOR INFRINGEMENT.

A complainant in a suit to enjoin a threatened infringement cannot make a preliminary injunction the sole object of his bill, and will not be permitted to hold such order in force, and rest upon that and a decree pro confesso, when a timely motion for dissolution is made by the defendant.

2. SAME—ESTOPPEL TO DENY VALIDITY OF PATENT.

One sued for infringement is not estopped to deny the validity of the patent by a contract by which he became agent for the sale of the patented article, where such contract was terminable at will, and he repudiated the agency before the alleged infringement.

3. CONTRACT—WHO MAY ENFORCE.

A contract between the principal stockholders in a corporation by which each agreed that, so long as he retained his stock, he should work, in the business to which the corporation related, only in the name of the corporation, and for the benefit of all the parties, cannot be enforced or taken advantage of by the corporation, which was not a party to it, in a suit against one of the parties, to which the others are not parties.

4. PATENTS—SUIT FOR INFRINGEMENT—ESTOPPEL.

A defendant is not estopped to deny the validity of the patent by the fact that he is a stockholder in the complainant corporation.

5. SAME—VALIDITY—AGGREGATION OF PARTS.

The doctrine of aggregation applies, not alone to a machine, but to an article of manufacture.

6. SAME—INVENTION.

A device, to be patentable, must be novel, whether a manufacture or a machine, within the meaning of the patent law; and the test of novelty is the same in both cases.

7. SAME—HOTEL CABINET.

The Manly & Daily patent, No. 486,113, for an hotel cabinet, is void for want of invention.

Appeal from the Circuit Court of the United States for the Northern District of Illinois.

This appeal is from an order of February 7, 1898, refusing to dissolve a preliminary injunction issued on July 17, 1894, in pursuance of an order of that date against "infringing upon the complainant's rights under letters patent of the United States No. 486,113." The bill shows that the patent, which bears date November 15, 1892, was issued to John A. Manly and Charles T. Daily, as assignees of David B. Lincoln, the alleged inventor, and that, by mesne assignments duly recorded, the complainant, incorporated under the name "Chicago Hotel Cabinet Company," had become the sole owner of the patent. It is also alleged that in December, 1891, Manly and Daily, who were then engaged in making and selling the advertising cabinets described in the letters patent afterwards granted, entered into a written contract with the defendant, whereby he agreed to enter and remain in their employment for two years, devoting his entire time and attention to the business of placing cabinets and securing advertisements therefor; that the contract was assigned to the complainant upon its incorporation, and that the defendant remained in its employment during the two years stipulated and thereafter upon the same terms, the contract, it is alleged, having "been extended until the present time by the implied assent of your orator and the said defendant"; that in the conduct of the business the complainant has furnished the defendant with a sample cabinet and a set of plates, photographs, and lithographs and necessary material for prosecuting the business, and, upon his weekly reports showing business done, has advanced

to him, in payment of his commission, a percentage of the face of the contracts reported; that recently, instead of carrying out his agreement in good faith, according to instructions sent him, he has surreptitiously, and without right or authority, and without terminating his employment, or giving notice of his intention or desire to be released from the obligations of his contract, taken in his own name one or more contracts with hotel keepers, whereby he has agreed to furnish an advertising cabinet in defiance of complainant's rights, and, as complainant believes, in infringement of said letters patent, and has threatened and declared, both to the hotel keepers and to the officers of the company, that he would ignore and disregard the company's rights under the patent, and would furnish cabinets like that of the patent to hotel keepers, and would secure, and in fact has secured, from them, agreements to take and use the same, and has secured from advertisers advertisements to be placed on the cabinets, in defiance of his obligations to the complainant and of its rights under the patent; that the defendant, during his employment, has carried with him, and has used, a copy of the letters patent in obtaining contracts with hotel keepers and advertisers, alleging their validity, and asserting the complainant's rights thereunder; that orally and in writing the defendant has threatened to infringe upon complainant's exclusive rights under the patent, has denied the validity thereof, and announced his determination to wholly disregard the same, once especially in a letter of May 9, 1894, of which a copy is made an exhibit, and that the complainant fears that, unless restrained, the defendant will violate and infringe the exclusive rights granted under the patent, and will cause complainant great loss and irreparable damage; that the defendant is insolvent; that he has been requested to refrain from such infringement, but has refused so to do, and still threatens to proceed. Other averments need not be stated. The prayer of the bill, waiving answer under oath, is in part that the defendant be perpetually enjoined and restrained from making, using, or vending advertising cabinets made according to the patent; that the patent be declared valid, the complainant adjudged the owner, and a preliminary or provisional injunction issued.

Subpœna was duly issued and served upon the defendant, and also notice of an application to be made for an injunction on May 28, 1894, was served upon him personally on the preceding 21st. On the day set, notice of a postponement of the hearing was accepted by the defendant's attorney; but when, on July 17th, the order for an injunction was granted, it is not recited and does not appear in the record that the defendant was present or was represented. The order, by its terms, was to be "without prejudice to the right of the defendant to move for the dissolution of the injunction." On October 22, 1894, the defendant not appearing, a decree pro confesso was entered for want of an answer. On July 19, 1897, the defendant made an affidavit, and his solicitors signed a notice addressed to the solicitor for the complainant to the effect that on the next day, or as soon thereafter as practicable, the defendant would present the affidavit, and move the court to set aside the default, and to allow him to plead, answer, or demur to the bill. The material part of the affidavit is that no copy of the injunction was ever served on the defendant; that he lately first learned that the complainant claimed to have had an injunction issued against him; that early in June, 1894, soon after the bill was filed, Manly and Daily, who owned all but two shares of the capital stock of the complainant company, and the defendant, began negotiations for the settlement of the matters complained of in the bill; that the negotiations progressed favorably, and before July 17, 1894, reached a practical agreement, which on July 30, 1894, was reduced to writing, and signed, whereby the defendant purchased and became the owner of 167 of the 500 shares of the capital stock of the company, and it was agreed that the suit should be dismissed; that the defendant relied upon the agreement, but the complainant, in bad faith and in fraud of his rights, had an injunction issued after a settlement had been practically reached, and in October, after the agreement had been signed, had the default entered against him; that the complainant had no claim in fact to any relief against him; and that, as counsel advise, no grounds for relief in equity are alleged. Manly and Daily each made affidavit, denying that

portion of the defendant's affidavit to the contrary, and asserting that it was understood and agreed, as a part of the settlement, that the suit and the injunction should stand, and that the injunction was issued and the default taken with the full knowledge of the defendant. All these affidavits and the notice of the motion seem not to have been filed until October 4, 1897, when—the parties present—the court ordered the default set aside upon payment of all costs by the defendant, and two days later, the costs having been paid, the defendant was given time to plead. He demurred to the bill, and, the demurrer having been overruled, on November 6, 1897, he answered, denying that he was under contract or other obligation, legal or moral, to work for the complainant when the bill was filed, denying invention and infringement, and averring two years' prior public use in numerous hotels named, and anticipation by numerous prior patents specified. In support of the motion to dissolve the injunction, the defendant read three affidavits of his own, in addition to that of July 19, 1897, and put in evidence a number of prior patents. In opposition to the motion, besides the affidavits of Manly and Daily in response to the motion to set aside the default, were read affidavits made by officers of the company and others, two of whom testified as experts, but only in general terms,—one to the novelty, and the other to the infringement, of the patent in suit. The agreement of July 30, 1894, was a tripartite individual contract, executed by Daily, Manly, and Antisdel, and, besides the sale of stock in the company by Daily and Manly each to Antisdel, and besides providing a rate of commission for sales of cabinets, contains the stipulation "by all parties to this contract that all business done by any of them in the advertising business in the United States of America or Canada shall be done in the name of the company, and for the benefit of all the parties concerned, * * * to hold good as long as the said parties are stockholders in the said company." There was also a contract executed on December 8, 1894, by the cabinet company and Antisdel, whereby the latter agreed "to devote his whole time and attention to soliciting on the cabinets gotten out by the company until December 31, 1895," but that contract was not renewed or in any way continued in force after that date.

The following letters patent of earlier date than the one in suit are in the record: 5,214 and 7,170, to L. W. Burton; 27,964, to D. B. Lincoln; 88,458, to W. P. Delaplain; 115,494, to A. W. McAllister; 155,101 and 181,-863, to J. D. Mortimer; 205,151, to J. Tatham; 217,905, to O. Sackett; 218,883, to S. W. Hopkins; 236,861, to E. M. Tree; 265,862, to H. Porter; 269,681, to F. King; 301,318, to J. N. Ackerman; 319,720, to J. M. Hubbard; 358,644, to D. P. Brophy; 361,995, to T. Dougherty; 362,926, to C. M. Benninghous; 377,414, to I. B. Stone; 380,391, to O. C. Hoffman.

Henry M. Matthews and Edward Taggart, for appellant.

C. C. Linthicum, for appellee.

Before WOODS and SHOWALTER, Circuit Judges, and BAKER, District Judge.

WOODS, Circuit Judge, after making the foregoing statement, delivered the opinion of the court.

If considered as brought for the purpose of enforcing obligations of contract, the bill would have to be dismissed because it does not show the diverse residence and citizenship of parties necessary to give the court jurisdiction. The contract alleged, however, is not one which could be specifically enforced, and, unless the suit is for an injunction against infringement of letters patent, no sufficient ground for equitable relief is stated.

The first proposition of the appellant—urged on the authority of Depeyster v. Graves, 2 Johns. Ch. 148; Duncan v. Finch, 10 Ill. 296; Woodworth v. Edwards, 3 Woodb. & M. 120, Fed. Cas. No. 18,014;

10 Am. & Eng. Enc. Law, 1019—is that "the want of due diligence on the part of the complainant in prosecuting a suit in equity is always a cause for dissolving an injunction." This proposition and the authorities cited, it is answered, are not applicable because in this case "there was nothing for the complainant to do  *  *  *  after having obtained the preliminary injunction and default. The object of the bill was to restrain a threatened infringement, and until there was an actual infringement there was no occasion for taking any further steps in the suit." The implication here that a temporary injunction may be the sole object of a bill is not true. Such relief is granted only as incidental and auxiliary to the final relief prayed, which, of course, may be only an injunction. The appellee, therefore, had no right to rest upon the preliminary order and the decree pro confesso, unless there was an excuse for so doing; but if it be true, as upon the evidence the court may well have found, that the order for the injunction was entered with the knowledge of the appellant, and that when the agreement of July 30, 1894, was executed, it was the understanding of the parties that the suit should not be dismissed, and that the injunction should remain in force, that was sufficient excuse, so long as nothing inconsistent with the understanding occurred, not only for the failure of the complainant to prosecute his suit to final decree, but for the delay of the appellant to move for the dissolution of the preliminary order and writ of injunction; for, while a diligent prosecution is the duty of a complainant, it is also the rule that laches or unexcused delay of a defendant in moving for the dissolution of a preliminary injunction may constitute ground for denying the motion when made. High, Inj. (3d Ed.) § 1480.

Another objection urged to the granting of the injunction is that it was not alleged nor proved that the validity of the patent had been adjudged, or that there had been such public acquiescence as to make an adjudication unnecessary. We deem it a sufficient answer to this that the defendant, while engaged in selling the patented article, had been accustomed to represent to the public that the patent was valid. As against him, that was better proof of the validity of the letters than any ordinary evidence of public acquiescence could have been. We do not assent, however, to the contention of counsel for the appellee, that by the agreements into which the appellant had entered, and by what he did in performance of them, he became estopped to deny the validity of the patent. The first agreement, which by its terms was limited to two years, had been continued in force, it is averred, by mutual consent, but not for any definite time; and, manifestly, the appellant was at liberty to quit the agency whenever he should choose, and, in respect to his subsequent conduct or dealings, could be bound by no continuing estoppel dependent on the agreement. If the suit were for an account of the proceeds of business done in the course of an agency, the doctrine of estoppel declared in the case cited of Kinsman v. Parkhurst, 18 How. 289, would apply; but the question here is whether one who has been under a contract of agency, determinable at will, to sell a patented article, if he discovers or concludes that the patent is invalid, may openly repudiate the agency, and, when sued for subsequent acts of infringe-

ment, may plead the invalidity of the patent as a defense. We know of no authority, and believe there is no sound reason, to the contrary. The contract of July 30, 1894, was made after the suit was brought and the injunction issued, and, besides, is a contract to which the cabinet company is not a party, and in which it has no interest. It is a contract by which the principal stockholders stipulated with each other individually that, so long as they were stockholders, all business done by any of them in "the advertising business" in the United States or Canada should be done in the name of the company, and for the benefit of all the parties. Whether Manly and Daily have themselves lived up to that contract, and under all the circumstances might be entitled to an injunction against Antisdel, forbidding the sale of advertising cabinets and of advertising privileges by him except in the name of the company and for the benefit of the parties to the agreement, could be properly determined in a suit brought by them against him for that purpose; but in this suit, to which they are not parties, it is not competent for the cabinet company to assert for its benefit their supposed rights under a contract to which it is neither party nor privy. It has been suggested, but manifestly cannot be true, that merely because he is a stockholder in the cabinet company, the appellant may not deny the validity of a patent owned by the company.

It follows that the question of the validity of the patent must be determined upon its merits, unaffected by estoppel or any consideration of personal equity.

In answer to the objection that the patent is for an aggregation, it is insisted that the doctrine of aggregation does not apply, because the patent is not for a machine, which has a law of action, but is for an article of manufacture, patentable for its peculiarities of construction "if each enters into the structure in such a way as to make it a new and useful device as a whole." Even by this rule the cabinet in question was not patentable, because it contains many old features or parts which in no way contribute to the novelty of the device as a whole, and whatever novelty there is in it is confined to one or two features of construction. But the proposition that the doctrine of aggregation is restricted in its application to machines as distinguished from articles of manufacture does not seem to be sustained by the decided cases. Hailes v. Van Wormer, 20 Wall. 353; Reckendorfer v. Faber, 92 U. S. 347; Trimming Co. v. Welling, 97 U. S. 7; Slawson v. Railroad Co., 107 U. S. 653, 2 Sup. Ct. 663; Bussey v. Manufacturing Co., 110 U. S. 146, 4 Sup. Ct. 38; Hill v. Wooster, 132 U. S. 693, 10 Sup. Ct. 228; Rob. Pat. §§ 154, 182, 185, note 1. See, also, Campbell v. Bayley, 18 U. S. App. 486, 11 C. C. A. 284, and 63 Fed. 463, and cases there cited.

Aside from the question of aggregation, this patent is invalid for the other reason urged that the device described is not an invention or discovery. To repeat the language used in Campbell v. Bayley, supra:

"Whether, within the meaning of the patent law, a device should be deemed a manufacture or a machine, in order to be patentable it must be novel; and by the decided cases the test of novelty would seem to be essentially the

same in the one instance as in the other. 'Nothing short of invention or discovery will support a patent for a manufacture, any more than for an art, machine, or composition of matter,' said Justice Clifford, in Milligan & Higgins Glue Co. v. Upton, 4 Cliff. 237, 251, Fed. Cas. No. 9,607; and the same expression is repeated in Collar Co. v. Van Dusen, 23 Wall. 530, 563, in context with the following pertinent statement: 'Articles of manufacture may be new in the commercial sense when they are not new in the sense of the patent law. New articles of commerce are not patentable as new manufactures, unless it appears in the given case that the production of the new article involved the exercise of invention or discovery beyond what was necessary to construct the apparatus for its manufacture or production.' "

This patent perhaps shows some features not before combined in exactly the same way, but "it is not enough that a thing shall be new in the sense that in the shape or form in which it is produced it shall not have been before known, and that it shall be useful, but it must, under the constitution and the statute, amount to an invention." Thompson v. Boisselier, 114 U. S. 1, 11, 5 Sup. Ct. 1042.

It is suggested that the margin of invention is certainly as great in this as in the recent case of Williams v. Wrapper Co., 30 C. C. A. 318, 86 Fed. 641, decided by this court. But it is only necessary to refer to the opinion there delivered for the clear distinction between the cases. It was there said of the Williams' invention, but cannot be said of the device now in question:

"It is different from anything before it, and is not an obvious or natural suggestion of what had preceded it in the art. * * * Simple as it is, it was a happy thought, and we hold it to have been a patentable discovery, because it was not directly suggested by anything which preceded it in the art to which it belongs, and was not fairly or logically deducible from any or all of the prior forms of construction."

These expressions were carefully framed, and are believed to embody an accurate statement of the general rule by which, in respect to novelty, the patentable and the unpatentable are to be distinguished.

The decree below is reversed, with direction to dismiss the bill.