## AMERICAN SADDLE CO. v. SAGER GEAR CO.

### (Circuit Court, W. D. New York. April 30, 1903.)

### No. 34.

1. PATENTS—ANTICIPATION—BICYCLE SADDLES.
    The Wheeler patent, No. 594,451, for a bicycle saddle, is void for anticipation, being for a union of old elements not disclosing invention.
2. SAME—DESIGN FOR BICYCLE SADDLE.
    The Wheeler design patent, No. 28,435, for a design for a bicycle saddle, was not anticipated, and is valid.

In Equity.. Suit for infringement of letters' patent No. 594,451 for a bicycle saddle, issued November 30, 1897, and No. 28,435, for a design for a bicycle saddle, issued March 29, 1898. both granted to B. F. Wheeler. On final hearing.

Horace Pettit, for complainant.
Osgood & Davis, for defendant.

HAZEL, District Judge. This suit is for infringement of two United States letters patent issued to the Wheeler Saddle Company, and subsequently assigned by B. F. Wheeler, the inventor, to complainant. Their numbers are 594,451, dated November 30, 1897, application filed May 28, 1897, and 28,435, issued March 29,° 1898, application filed August 9, 1897. Both patents relate to bicycle saddles; the earlier for a mechanical improvement, and the latter a design for the shape and configuration of the saddle. The functional patent, which will first be considered, has six claims, four of which—1, 3, 4, and 6—are alleged to be infringed. They read as follows:

"(1) In a bicycle saddle, the combination of the saddletree comprising two rearwardly extending independent members divided by a central opening and united in a reduced forwardly extending neck, of the leather covering consisting of two opposed layers embracing said tree, having central depressions, whose opposed faces meet between the members of said saddletree and extend outward to the rear margin of the saddle, and whose marginal edges meet beyond the perimeter of said tree, and the line of stitching around said marginal edges and following the line of said central depression."

"(3) In a bicycle saddle, the saddletree comprising two rearwardly extending flaring members curved at their rear edges and divided by an opening

extending forward through the back of said tree and having a reduced forwardly extending neck.

"(4) In a bicycle saddle, the combination of the saddletrees having two rearwardly extending members divided by an opening extending through the back thereof and having a forwardly-extending neck, of the padding mounted upon the tree, the two coverings of leather embracing said tree and padding, said leather being united between the divided members of said tree and beyond the marginal edges thereof, and the line of stitching through the united faces of said leathers around the divided members of said tree."

"(6) In a bicycle saddle, the combination of the saddletree having a reduced neck and flaring independent members divided by a central opening extending through the back of said tree, the coverings of leather embracing said tree and conforming thereto, the support or spring having a transverse bar which crosses the central opening between the members of the saddletree and is secured at opposite ends to said members."

The defendant has adapted, manufactured, and sold a construction and design identical with that of complainant. The defenses relied on challenge the novelty of both inventions on the ground of anticipation. The patentee disclaims a broad interpretation of the claims of the structural patent, but insists upon the validity of claims, which it is asserted describe an anatomical improvement in a bicycle saddle by the employment of old and new elements which produce a new result. The law is well settled that the mere employment of old elements in a mechanical device will not defeat a patent for a combination of elements which contribute a new and useful result. Bates v. Coe, 98 U. S. 31, 25 L. Ed. 68; Cantrell v. Wallick, 117 U. S. 689, 6 Sup. Ct. 970, 29 L. Ed. 1017. The specification declares that the object and purpose of the inventor is to provide a light, serviceable, anatomical bicycle saddle, which shall be shapely in appearance and strong in detail of construction. The record enumerates many patents to establish the defense of anticipation. The Beck, Brown, Hunt, and Milhot patents for bicycle saddles, however, are the best references, as each of them contains features unmistakably found in the Wheeler saddle. Bicycle saddletrees from the earliest period were commonly constructed of metal, leather, or wood, and covered with a layer of leather. The Wheeler saddletree is of wood, and is arranged with a longitudinal depression in the center. It is anatomically shaped or curved in semblance of two rounded lobes or of a flaring wing appearance beveled at the edges. The leather is firmly drawn over the saddletree, and is stretched to the leather underneath. The upper and lower leathers are sewed or stitched to leave a marginal edge. The expert witnesses did not agree as to the similarity in appearance of the Wheeler saddle and other saddles exhibited in anticipation. The saddles are dissimilar in appearance, but I am unable to discover any such practical difference between the Wheeler functional saddle and the prior art as will justify granting to the former a place in the field of invention. True, only a narrow claim is made, nevertheless the united elements by which the combination is formed are so clearly disclosed in the prior patents for the same construction as to establish that merely a union of such elements is accomplished, without producing a practical novelty. It may be that a more convenient and salable article has been produced by aggregating various features found in the Brown, Beck, Hunt, and Milhet saddles; but

their union, in the absence of original thought or inventive skill, is not patentable. The construction merely appears to be a skillful change or adaptation of what was old and well-known in similar constructions. Stanley v. Sargent, 8 Blatchf. 344, Fed. Cas. No. 13,289; 1 Robinson on Patents, § 154, and cases cited. The cantel and pommel with an opening in the center are quite common in bicycle saddles. In the Brown structure a rigid wooden saddletree is shown beveled at the edges covered with padding over which is tightly drawn and stitched a layer of leather fitting the upper and lower surfaces of the saddletree. The saddle has an opening in the middle, and the leather is stitched around the beveled edges of the tree in such a way as not only to give the edge a marginal appearance, but also to give the saddle strength and rigidity. Its shape is unlike that of the Wheeler, but the saddletree is of wood, has marginal edges of leather tightly drawn over the saddletree, and substantially stitched in the same manner as the Wheeler saddle. One of the essential features of the Wheeler saddle—that of rigidity—is clearly present in the Brown saddle, which has no separated lobes or rearwardly extending members, but in other respects embodies the essential features of claim 3 of the patent in suit. Complainant's expert witnesses assert that, as the Brown saddle does not disclose two independent members or lobes, the leather covering the saddletree cannot be stitched so as to form marginal edges similar in design or extent to those of the Wheeler saddle. This may be true, but that is merely due to the conformation of the saddle, and it may be doubted whether the mere change of convexity and rounding the rear end of the Brown saddle to one having two divided lobes or wings and an additional amount of padding so as to impart to it a bulbous appearance is entitled to classification in the field of mechanical invention. Whatever doubt exists in my mind with respect thereto is positively removed by the Milhet French patent. This patent has a flexible cushioned saddle and two metal independent members or wings divided by an opening through the middle. The leather is not drawn over the saddletree as tightly as in the Wheeler. It was not intended that the saddle should have any rigidity. The purpose of the inventor was to construct a yielding air-cushion saddle having a longitudinal, central opening between the divided lobes or members. This gives it the same anatomical appearance which is found in the Wheeler saddle. In my opinion, it substantially contains all the elements of the patent in suit except the support or spring, which is an element of claim 6. True, the saddletree is of metal parts with layers of leather so loosely arranged as to impart to the seat a soft and yielding appearance, while the Wheeler saddle is firm and rigid; but these are matters of detail, due, as stated by defendant's expert witness, to the different materials used in its construction. The change of these features to those that take their place in the Wheeler saddle is not patentably novel, especially as the Brown saddle is firm and unyielding. The Hunt patent discloses a spring having a transverse bar of substantially the same shape, and used in the same way as the support or spring described as an element in claim 6 of the Wheeler patent. The Beck saddletree is of wire, and has a longi-

tudinal central depression extending toward the rear of the saddle. The leather is so shaped and stitched as to give the saddle a divided wing appearance, although the purpose of the patentee was to provide a soft or yielding bicycle seat. As the essential elements of the claims of the patent in suit are found in the different bicycle saddles referred to, I am of the opinion that such claims are anticipated by the prior art. The alteration or change in the Wheeler saddle from the prior art was perhaps an improvement, for it resulted in placing upon the market a saddle of convenience, and which had the appearance of giving a comfortable seat to the user, but discloses nothing patentable or novel. The patent under consideration falls within the law enunciated in the following cases: National Sheet-Metal Roof Co. v. Garwood (C. C.) 35 Fed. 658; Burt v. Evory, 133 U. S. 349, 10 Sup. Ct. 394, 33 L. Ed. 647; Antisdel v. Chicago Hotel Cabinet Co., 32 C. C. A. 216, 89 Fed. 308; Office Specialty Co. v. Fenton Co., 174 U. S. 492, 19 Sup. Ct. 641, 43 L. Ed. 1058.

The design patent. I am of opinion that the design patent is infringed by the defendant. The specification of this patent says it—

"Consists in a trilateral bipennated figure comprising a rounded pommel, A, having curved depending members, D, and two opposed winged members, B, substantially biconvex in cross-section and separated by a dividing depression formed in the opposite faces of the saddle, which extends between said members from the rear, producing a design comprising two curved, rounded, independent, flaring wings, separated at the rear, and united by a rounded nose or pommel, into which said wings converge."

The specification further says:

"The sides and forward portion of the design describe an ogee curve * * * at which point the lines of the contour of the design curve outwardly, and from which point said lines extend forward approximately parallel, * * * and united at the forward curve of the pommel. The rear portions of the opposed wings describe semicircular curves which converge and terminate at a point, at which terminal said curves effect a union with the curved lines, which describe the margin of the flaring oblong central depression extending longitudinally of the design between the rounded wings and opening from the rear. Uniting the rear of the divided wings is an inwardly deflected curved line."

The appearance of the saddle in its entirety is new, and pleasing to the eye. The material feature easily distinguishes it from prior designed bicycle saddles. This is due in part to its curvature, finish, and proportions. I do not think the Eddy, Beck, and Milhet patents, or even the Bush design patent, which is more nearly in resemblance, anticipate the Wheeler design patent. The Bush patent, No. 27,616, issued August 31, 1897 (three months later than the invention in suit), shows a design bicycle saddle much like that of Wheeler, and yet it is unlike in appearance. The distinguishing features are easily pointed out. The general curvature and finish of the saddle give it a fanciful or neat appearance, which increases its popularity with bicycle riders, and insures financial success to the inventor. The language of the Supreme Court in Gorham Company v. White, 14 Wall. 511, 20 L. Ed. 731, is applicable:

"The law manifestly contemplates that giving certain new and original appearances to a manufactured article may enhance its salable value, may enlarge the demand for it, and may be a meritorious service to the public.

\* \* \* It is the appearance itself which attracts attention and calls out favor or dislike. It is the appearance itself, therefore, no matter by what agency caused, that constitutes mainly, if not entirely, the contribution to the public which the law deems worthy of recompense."

See, also, Rowe v. Blodgett, 50 C. C. A. 120, 112 Fed. 61; Eaton v. Lewis (C. C.) 115 Fed. 635; Marvel Co. v. Pearl (C. C.) 114 Fed. 946.

I, therefore, conclude that the defendant has not overcome the novelty and patentability of the design patent, which prima facie belongs to it. Phila. & Trenton Rd. Co. v. Stimpson, 14 Pet. 448, 10 L. Ed. 535; Seymour v. Osborne, 11 Wall. 516, 20 L. Ed. 33; Anderson v. Monroe (C. C.) 55 Fed. 396.

A decree may be entered dismissing the bill as to patent No. 594,-451, and a decree of infringement for the complainant upon design patent No. 28,435. As the defendant has succeeded in establishing the invalidity of the functional patent, the complainant, on the authority of Schmid v. Scovell Mfg. Co. (C. C.) 37 Fed. 345, and Penna. Diamond-Drill Co. v. Simpson (C. C.) 29 Fed. 288, is not entitled to costs.